Ednin I Guardin
20656 Blackhank
Chatsworth CA 91311
(810/201 4167

**FOR COURT USE ONLY**

**FILED**

JUN 1 9 2019

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA –** _____ **DIVISION**

Name of Debtor:

Ednin I. Guardin.

CASE NO.: 1:18- BK -12337- MT

CHAPTER: ☐ 7 ☐ 11 ☐ 12 ☒ 13

ADVERSARY NO.: _____
(If applicable)

**TITLE OF DOCUMENT (specify):**

Letter addressed to Honorable
Judge Maureen A. Tighe.

*(This cover sheet is for use by filers when the case
name, number, and other information is not
included on the first page of a filing)*

<u>Please Print</u>

Name of person filing this document: Ednin I. Guardin.

Street Address: 20656 Blackhank St. Chatsworth CA 91311

Telephone number: (818) 201- 4167.

Email Address: Eingc @ ynhoo.com.

The filer of this document is   ☒ the Debtor   ☐ a creditor

☐ other (specify): _____

Date: 6/19/19

_____
Signature of person filing this document

This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California

*July 2015*

**FILED.DOCUMENT.COVER.SHEET**

Edwin I Guardia
20656 Blackhawk st Chatsworth Ca 91311
(818-201-4167)
eiagc@yahoo.com

June 19, 2019

To  :        Honorable United States Bankruptcy Judge Maureen A. Tighe

Re  :        Case No 1:18-Bk-12337-MT
             Notice of Tentative Ruling Re Objection to the Secure Claim of
             Bank of America National Association (Claim 5)

Dear Honorable Judge Maureen Tighe,

I'm the debtor in the Case mentioned above. I must bring some issues to your attention that you were not aware of at the time you issue the Tentative Ruling which resulted in a Judgement . I'm writing this formal letter by Suggestion of the Trustee Office after having a disagreement with my counsel, Alla Tenina regarding the **objection to claim number (5)** Bankruptcy Chapter 13, My counsel informed me around February 2019 after a hearing she had with the Previous Judge Martin Barash. He instructed Bank of America's Counsel to produce a Power of Attorney Document in regards of my mortgage/Deed of trust **"SERVICING RIGHTS FROM BANK OF AMERICA TO WELLS FARGO BANK".** One month later Bank of America's Counsel Dane Exnowski, filed in March 29 2019 **"Objection to Claim number (5) Supplemental Opposition to the Claim to Objection to Claim"** (I'm Attaching herein as **group exhibit "A"** fully incorporated). Bank of America Counsel Dane Exnowski obtained an **unfair judgment** and used the following:

**\*DECLARATION OF TANELKA KIA WILSON** (I'm Attaching herein as **group exhibit "B"**) This 3 page document is void because of 3 factors : **First** The Declaration of Tanelka Kia Wilson   **is not based off a Bank of America Employee** (In order to represent the Secure Creditor Bank of America) is from another institution Wells Fargo. **Second** Tanelka Kia Wilson in her declaration used point # "9 Power of Attorney Between WF and BANA at the time of the loan modification 1/22/2010, that modifies the terms of the note WFB had power of Attorney to inter alia,execute loan modification agreements on behalf of BANA". **Wells Fargo never had a Power of Attorney to Service this Loan at that time of the Loan Modification took place as she said in 1/22/2010. This Blank limited Power of Attorney 4 page document presented as Exhibit it's in BLANK it says nothing or contains information in my Mortgage /deed of trust, besides the date signed is February 15 2018 not even before January 22 210. Not even a Bailee Letter was presented to support Service Rights from BANA to Wells Fargo.**

**Third** Taneka Kia Wilson in her declaration point # "10 BANA is the current Beneficiary of record with respect to the subject Deed of Trust encumbering the property and which secures repayment of the Note. True and correct copies of the respective recorded assignments are attached in Exhibit A pp, 47-50" **The Loan Modification and The recorded Assignments are fraudulent/void documents because  I reported to the Authorities back in June 2017  I'm attaching herein as Group Exhibit "C".**

This **Bankruptcy Proceeding Counsel Dane Exnowski has misrepresented your Court, The Trustee, my Attorney and myself stating he represent BANA the secure Creditor.** It's my understanding, if there is a Secure Creditor as in this Case is BANA but none employee from BANA has made a Declaration in my Bankruptcy Chapter 13 Proceeding. I have to refer to this statement for my ongoing Case Appeal case # B289099 I filed in the Appeal Court in November 28 2018 **APPELANT'S NOTICE TO APPEAL COURT ONE OF THE APPELLES 'BANK OF AMERICA, NA IS NOT PROPERLY REPRESENTED BY COUNSEL (**I'm attaching herein as **group exhibit "D".)**

I made a letter and reported this unethical and fraudulent behavior (I'm attaching herein as **group exhibit "E" it goes along with the previous exhibits I mentioned)** in order to get an unfair judgement used by opposite Counsel Dane Exnowski to the following Authorities:

1. Congressman Brad Sherman Office in Van Nuys (Hand Delivered)
2. US Trustee of the Department of Justice Attorney Russell Clementson
   (Fraud Unit) 915 Wilshire Blvd. suite 1850 Los Angeles Ca 90017. (Hand
   Delivered in May 15 2019 to Attorney Clementson).
3. FBI Off. Located at 11000 Wilshire Blvd. suite 1700 Los Angeles Ca 90024
   (Hand Delivered to Duty Officer May 6 2019)
4. Secret Service Off. Located at 725 South Figueroa Los Angeles CA
   (Hand Delivered to Assigned Officer Patrick Hayes May 28 2019)

I was contacted by a Wells Fargo Employee Sara Zepp 800-853-8516 ext 1335526001 I asked her on April 9 2019, before the April 24  hearing took place to instruct the Attorney Exnowski to withdraw the documents he filed on march 29 2019. She ensured me she would do so and call me afterwards however, she never did not. Instead, she sent me a closing letter dated June 9 2019, and avoided to answer this action done by its Attorney on March 29 2019; and showing my Appeal case had nothing to do with and it was irrelevant to the current case at the time (I'm attaching herein this letter as **Exhibit "F".)**

Your Honor to support my statement above I'm Attaching herein a Case against Wells Fargo as Judicial Notice as **Group Exhibit "G"** herein fully incorporated. I highlighted with yellow marker in the Table of Contents issues directly I stated in this letter. For last, I would like to know if I'm entitled to any remedy for the actions done under 851 FALSE CLAIMS -18 U.C.C § 152(4). I have to mention English is not my primary language please forgive me for any orthographic mistakes I could have made in this letter. **In order to get fairness and justice in this proceeding, I wanted to inform you of the proper proof and issues that you were unaware of before you issued your tentative ruling that which became a Judgment**
I declare under penalty of Perjury under the Laws of United States of America that the foregoing is true and correct.

Dated June 18, 2019

EDWIN IVAN GUARDIA

Enclosures:

FILED & ENTERED

APR 24 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Fisher    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Edwin I. Guardia,<br><br>                    Debtor. | Case No.: 1:18-bk-12337-MT<br><br>Chapter 13<br><br>**NOTICE OF TENTATIVE RULING RE OBJECTION TO THE SECURED CLAIM OF BANK OF AMERICA, NATIONAL ASSOCIATION (CLAIM 5)**<br><br>Hearing<br>Date:  April 23, 2019<br>Time:  11:00 a.m.<br>Ctrm:  302 |

At the above date and time, the Court held a hearing on the Objection to the

Secured Claim of Bank of America, National Association (the "Objection"), filed by Debtor.

Appearances are as noted on the record for the hearing.  At the hearing, the Court

adopted its tentative ruling on the Objection.  A copy of the Court's tentative ruling is

attached to this cover page.

//

//

//

1

1  Debtor argues that creditor's "informal proof of claim" theory has been superseded by an
   amendment to Rule 3002(c). This argument falls flat. Rules establishing the timeliness of
2  claims were in effect at the time that the <u>Barker</u> was decided--in fact, one of the
   requirements of an informal proof of claim is that the document must be filed within the
3  statutorily prescribed time frame. The informal proof of claim doctrine should therefore be
   understood as expanding the definition of "proof of claim" beyond formal proofs of claim,
4  and deeming a claim timely as long as the "informal" proof of claim was filed within the
   time allowed by applicable rules. Rule 3002(c) is therefore integral to and not in conflict
5  with the application of the informal proof of claim theory. Nor does the 2017 amendment to
   3002(a), requiring secured creditors to file proofs of claim, affect or supersede the
6  precedent on informal proofs of claims.

7  APPEARANCE REQUIRED

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    Date: April 24, 2019

24                                              Maureen A. Tighe
                                                United States Bankruptcy Judge
25

26

27

28

3

# GROUP EXHIBIT "A"

\*Objection to Claim number (5) Supplemental Opposition to the Claim to Objection to Claim filed by Counsel Dane Exnowski March 29 2019.

# File an answer to a motion.

<u>1:18-bk-12337-MT Edwin I Guardia</u>

| | | |
|---|---|---|
| Type: bk | Chapter: 13 v | Office: 1 (San Fernando Valley) |
| Assets: y | Judge: MT | Case Flag: Repeat-cacb, RepeatPACER, AmdPln13F |

## U.S. Bankruptcy Court

## Central District of California

Notice of Electronic Filing

The following transaction was received from Dane W Exnowski entered on 3/29/2019 at 10:44 AM PDT and filed on 3/29/2019

**Case Name:**     Edwin I Guardia
**Case Number:**     <u>1:18-bk-12337-MT</u>
**Document Number:** <u>64</u>

**Docket Text:**
Opposition to (related document(s): [44] Motion RE: Objection to Claim Number 5 by Claimant Bank of America, N.A.. *with proof of service* filed by Debtor Edwin I Guardia) *(Supplemental)* Filed by Creditor BANK OF AMERICA, N.A. (Attachments: # (1) Declaration # (2) Exhibit) (Exnowski, Dane)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** Supplemental Response.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=3/29/2019] [FileNumber=94233675-0] [aa6b5b49ab55717ebdac2ef445cb76c2adf9d5ac4360218f21d5b56a97ba16620a 777dc1e3d8b6b624e30557fb5f20478ddc2c82dbf623dc45382d82ab64719e]]
**Document description:** Declaration
**Original filename:** C:\fakepath\Signed Declaration.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=3/29/2019] [FileNumber=94233675-1] [0dea569ebd2d06dbbf457ed89024a1714242364c2257588ece28b507fb4f661cde 9f49ff1f3641d817e01c9a84b7c166b768eeafce8aeaa1bb35a2470a3cd912]]
**Document description:** Exhibit
**Original filename:** C:\fakepath\EXHIBIT A.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=3/29/2019] [FileNumber=94233675-2] [1aed36df402091c24751f43d22bb7f98141df6bc989669c2fbef7a442bbf020966 0db14ac4aec17d573186ba19e988f4b942c657b0b5cb7a2ff07384b5232f6c]]

## 1:18-bk-12337-MT Notice will be electronically mailed to:

Dane W Exnowski on behalf of Creditor BANK OF AMERICA, N.A.
dane.exnowski@mcalla.com, bk.ca@mcalla.com

Dane W Exnowski on behalf of Interested Party Courtesy NEF
dane.exnowski@mcalla.com, bk.ca@mcalla.com

Elizabeth (SV) F Rojas (TR)

Alla Tenina on behalf of Debtor Edwin I Guardia
alla@teninalaw.com, jenny@teninalaw.com

Edward A Treder on behalf of Interested Party Courtesy NEF
cdcaecf@bdfgroup.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

Robert P Zahradka on behalf of Creditor HSBC Bank USA, National Association, as Trustee, in trust for the
registered holders of ACE Securities Corp. Home Equity Loan Trust, Series 2006-NC2, Asset Backed Pass-
Through Certificates
caecf@tblaw.com, RPZ@tblaw.com

**1:18-bk-12337-MT Notice will not be electronically mailed to:**



Dane W. Exnowski, SBN 281996
McCalla Raymer Leibert Pierce, LLP
301 E. Ocean Blvd., Suite 1720
Long Beach, CA 90802
Telephone: 562-983-5365
Fax: 562-983-5365
BK.CA@McCalla.com

Attorneys for Bank of America, N.A. as
Serviced by Wells Fargo Bank, N.A.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In Re | Case No.: 1:18-bk-12337-MT |
| EDWIN I. GUARDIA, | Chapter 13 |
| Debtor. | **BANK OF AMERICA, N.A.'S SUPPLEMENTAL OPPOSITION TO OBJECTION TO CLAIM** |
| | **_HEARING DATE_:**<br>Date: **4/23/2019**<br>Time: **9:30 a.m.**<br>Place: **ctrm 302** |

**TO THE HONORABLE MAUREEN TIGHE, UNITED STATES BANKRUPTCY COURT JUDGE, THE DEBTOR, COUNSEL FOR DEBTOR, AND OTHER INTERESTED PARTIES:**

Bank of America, N.A. ("BANA") as serviced by Wells Fargo Bank, N.A., hereby files its supplemental response to its opposition to Debtor's Objection to Secured Claim of Bank of America, National Association (Claim 5) filed on 12/27/2018 as docket number 44 (the "Objection").

///
///
///
///

## A. **BANA HAS STANDING WITH RESPECT TO THE CLAIM**

As correctly pointed out by Debtor, a creditor has standing with respect to a proof of claim if it is a person entitled to enforce the note under applicable non-bankruptcy law [Debtor's Objection, p. 3 (citing *In Re Veal*, 450 B.R. 897 (9th Cir. BAP 2011)]. *See also In re Hwang*, 438 B.R. 661, 665 (C.D. Cal. 2010) ("[FRCP] 17 provides... "[a]n action must be prosecuted in the name of the real party in interest...[t]he real party in interest under [FRCP] 17 is the party with the right to enforce a claim under the applicable substantive law.") (internal citations omitted) (citations omitted). However,

California Commercial Code § 3301 provides, in pertinent, that a "person entitled to enforce" an instrument means (a) the holder of the instrument, or (b) a nonholder in possession of the instrument who has the rights of a holder. As applicable hereto, pursuant to California Commercial Code § 1201(b)(21)(A), 'holder' means: the person in possession of a negotiable instrument that is payable either to bearer[1] or, to an identified person that is the person in possession.

Here, the subject note is endorsed in blank and, thus, is payable to bearer. *See* **Declaration, ¶ 6.** Furthermore, BANA is in possession of the subject note by and through its custodian of records. *See* **Declaration, ¶ 8.** As such, BANA is entitled to enforce the note and is, therefore, a real party in interest with respect to the Claim and has standing thereunder.

///
///
///
///
///
///
///
///
///
///

---

[1] *See also* Cal. Comm. Code § 3109(a)(2) (providing that a promise or order is payable to bearer if it does not state a payee).



OBJECTION TO PLAN                                          2

1

## CONCLUSION

2      Based on the foregoing, BANA requests that the Court overrule the Objection in its entirety.  If

3  the Court is inclined to disallow the Claim on the basis of untimeliness, BANA would request language

4  in any form of order confirming that the disallowance thereof is strictly limited to distribution under the

5  Plan and does not constitute an adjudication of the Claim's underling validity or enforceability.

6  DATED: March 29, 2019                         Respectfully Submitted,

7                                                                   McCalla Raymer Leibert Pierce, LLP.

8

9                                                         By:  /s/ Dane W. Exnowski
                                                                       DANE W. EXNOWSKI
10                                                                    Attorneys for Secured Creditor

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**1 N. Dearborn, Suite 1200, Chicago, IL 60602**

A true and correct copy of the foregoing document entitled (*specify*): **BANK OF AMERICA, N.A'S SUPPLEMENTAL OPPOSITION TO OBJECTION TO CLAIM, DECLARATION OF WELLS FARGO BANK N.A. IN SUPPORT OF OPPOSITION TO OBJECTION TO CLAIM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **March 29, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

*U.S. Trustee*
ustpregion16.wh.ecf@usdoj.gov

*Trustee*
Elizabeth (SV) F Rojas (TR)
cacb_ecf_sv@ch13wla.com

*Debtor's Attorney*
Alla Tenina
alla@teninalaw.com

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**
On (*date*) **March 29, 2019**, I ~~served~~ the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding ~~by placing a true and correct copy thereof in a sealed envelope~~ in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*U.S. Bankruptcy Judge*
Honorable Maureen A. Tighe, Chief Judge
21041 Burbank Boulevard, Suite 324
Woodland Hills, CA 91367

*Debtor*
Edwin I Guardia
20656 Blackhawk St
Chatsworth, CA 91311

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/29/2019 | Susana Hernandez | */s/ Susana Hernandez* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |



This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

1  Dane W. Exnowski, SBN 281996
   McCalla Raymer Leibert Pierce, LLP
2  301 E. Ocean Blvd., Suite 1720
   Long Beach, CA 90802
3  Telephone: 562-983-5365
   Fax: 562-983-5365
4  BK.CA@McCalla.com
5
6  Attorneys for Bank of America, N.A. as
   serviced by Wells Fargo Bank, N.A.
7
8              UNITED STATES BANKRUPTCY COURT
9    CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY DIVISION
10
11  In Re                          Case No.: 1:18-bk-12337-MT
12
    EDWIN I. GUARDIA,              Chapter 13
13
                Debtor.            **DECLARATION OF WELLS**
14                                 **FARGO BANK, N.A. IN SUPPORT**
                                   **OF OPPOSITION TO OBJECTION**
15                                 **TO CLAIM**
16                                 **_HEARING DATE_:**
17                                 Date: **4/23/2019**
                                   Time: 9:30 a.m.
18                                 Place: **ctrm 302**
19
20
21
22  1.  I  Talneca Kia Wilson_____  declare:
23  2.  I have personal knowledge of the matters set form in this declaration and, if called
24  upon to testify, I could and would competently testify thereto. I am over 18 years of age.
25  3.  I am a Vice President Loan Documentation by Wells Fargo Bank, N.A. ("WFB"). As an
26  employee of WFB, I have personal knowledge of and am familiar with the types of records
27  maintained by WFB in connection with the Debtor's loan account and the procedures for
28  creating those types of records.  I have access to and have reviewed the books, records and files

DECLARATION
- 1 -

1    of WFB that pertain to the Loan Account and extensions of credit ("Account") given to the

2    Debtor concerning the property securing such Account, *to wit*, 20656 Blackhawk Street,

3    Chatsworth, CA 91311 ("Property"). The information in this declaration is taken from WFB's

4    business records regarding the Account.  The records are:  (a) made at or near the time of the

5    occurrence of the matters recorded by persons with personal knowledge of the information in the

6    business record, or from information transmitted by persons with personal knowledge; and (b)

7    kept in the course of WFB's regularly conducted business activities.  It is the regular practice of

8    WFB to create and maintain such records.

9         4.   WFB is the authorized loan servicer for Bank of America, N.A. ("BANA") in

10   connection with the Account at all times since WFB transferred the subject note to BANA.

11        5.  On 12/07/2018, WFB caused to be filed BANA's proof of claim, which was assigned

12   claim number 5-1 ("Claim").  A true and correct copy of the Claim is attached as Exhibit A to

13   BANA's supplemental opposition filed concurrently herewith.

14        6.  **Promissory Note.**  Edwin I Guardia executed a note dated 11/17/2005 in the original

15   principal amount of $560,000 ("Note").  A true and correct copy of the Note is attached in

16   Exhibit A, at pp. 18-22.  WFB is the original payee under the Note.  WFB endorsed the Note in

17   blank; WFB's endorsement does not state a payee and is payable to bearer. The reference to

18   'Wells Fargo Bank N.A.' in WFB's endorsement of the Note is as the endorsing party and not as

19   a payee.

20        7.  **Transfer of the Note.**  In 2009, WFB sold the Note to BANA and WFB thereafter

21   serviced and continues to service the Account on behalf of BANA.

22        8.  **Ownership and Possession of the Note.**  The Note is owned by BANA.  BANA is in

23   possession of the Note through its custodian: US BANK CORPORATE TRUST, located at 4527

24   METROPOLITAN CT #C, FREDERICK, MD 21704.

25   ///

26   ///

27   ///

28   ///

9.  **Power of Attorney between WFB and BANA.**  At the time of the loan modification dated 1/22/2010 that modified the terms of the Note, WFB had power of attorney to, *inter alia*, execute loan modification agreements on behalf of BANA.

10.  BANA is the current beneficiary of record with respect to the subject deed of trust encumbering the Property and which secures repayment of the Note.  True and correct copies of the respective recorded assignments are attached in Exhibit A, pp. 47-50.

Executed this 15th day of March 2019 at Fort Mill, South Carolina.


_____
Signature

Printed Name: Talneca Kia Wilson

Title: Vice President Loan Documentation

Wells Fargo Bank, N.A. as servicer for Bank of America, N.A.

# EXHIBIT "A"



Fill in this information to identify the case:

Debtor 1   Edwin Guardia

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Central District of California**

Case number:   **18-12337**

**FILED**
U.S. Bankruptcy Court
Central District of California

12/7/2018

Kathleen J. Campbell, Clerk

## Official Form 410
## Proof of Claim

04/16

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Bank of America, N.A.

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Bank of America, N.A.

Name

c/o Wells Fargo Bank, N.A. as Servicer
Default Document Processing
N9286-01Y, 1000 Blue Gentian Road
Eagan, MN 55121-7700

Contact phone   (800) 274-7025

Contact email
POCNOTIFICATIONS@WELLSFARGO.COM

Where should payments to the creditor be sent? (if different)

Wells Fargo Bank, N.A.

Name

Attention: Payment Processing
MAC #F2302-04C
1 Home Campus
Des Moines, IA 50328

Contact phone   (800) 274-7025

Contact email
POCNOTIFICATIONS@WELLSFARGO.COM

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
WFCMGE1812337CAC85561046

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known)   Filed on
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing?

Official Form 410                    Proof of Claim                    page 1



**Part 2:** **Give Information About the claim as of the date the case was filed**

| | | |
|---|---|---|
| 6. Do you have any number you use to identify the debtor? | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: | 1046 |

| | |
|---|---|
| 7. How much is the claim? | $ 910628.01    **Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Money Loaned |

| | |
|---|---|
| 9. Is all or part of the claim secured? | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☑ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☑ Other. Describe:   20656 BLACKHAWK ST CHATSWORTH CA 91311~2<br><br>**Basis for perfection:**   Recorded Deed of Trust<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Value of property:   $<br><br>Amount of the claim that is secured:   $ 910628.01<br><br>Amount of the claim that is unsecured:   $ 0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>Amount necessary to cure any default as of the date of the petition:   $ 373773.84<br><br>Annual Interest Rate (when case was filed)   5  %<br>☑ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $ |

| | |
|---|---|
| 11. Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: |



| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐  I am the creditor.

☑  I am the creditor's attorney or authorized agent.

☐  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    _12/7/2018_____

MM / DD / YYYY

/s/ Maun Michelle Mason

Signature

Print the name of the person who is completing and signing this claim:

| Name | Maun Michelle Mason |
|---|---|
| | First name     Middle name     Last name |
| Title | Vice President Loan Documentation |
| Company | Wells Fargo Bank, N.A. |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | |
| | Number   Street |
| | . |
| | City   State   ZIP Code |
| Contact phone | _____  Email  _____ |

For Informational Purposes Only

**Fill in this information to identify the case:**

Debtor 1    Edwin I Guardia _____

Debtor 2
(Spouse, if filing) _____

United States Bankruptcy Court for the: Central District of California

Case number 1:18-bk-12337-MB _____

Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Official Form 410
## Proof of Claim

04/16

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Bank of America, N.A.

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

[X] No
[ ] Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Wells Fargo Bank, N.A.
Default Document Processing
N9286-01Y

Name
1000 Blue Gentian Road

Number    Street
Eagan MN 55121-7700

City        State    ZIP Code

Contact phone   800-274-7025

Contact email   POCNOTIFICATIONS@WELLSFARGO.COM

**Where should payments to the creditor be sent? (if different)**

Wells Fargo Bank, N.A.
Attention: Payment Processing
MAC# F2302-04C

Name
1 Home Campus

Number    Street
Des Moines IA 50328

City        State    ZIP Code

Contact phone   800-274-7025

Contact email   POCNOTIFICATIONS@WELLSFARGO.COM

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

W F C M G E 1 8 1 2 3 3 7 C A C 8 5 5 6 1 0 4 6

**4. Does this claim amend** ☒ No
**one already filed?** ☐ Yes.  Claim number on court claims registry (if known) _____  Filed on _____
MM/DD/YYYY

**5. Do you know if anyone** ☒ No
**else has filed a proof** ☐ Yes.  Who made the earlier filing? _____
**of claim for this claim?**

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |

**6. Do you have any number** ☐ No
**you use to identify the** ☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 1046
**debtor?**

**7. How much is the claim?** $ 910,628.01 _____   **Does this amount include interest or other charges?**
☐ No
☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the**   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
**claim?**
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as healthcare information.
Money Loaned

**9. Is all or part of the claim** ☐ No
**secured?** ☒ Yes.  The claim is secured by a lien on property.
**Nature of property:**
☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe:   20656 BLACKHAWK ST  CHATSWORTH CA 91311-2405

**Basis for perfection:**   Recorded Mortgage/Deed of Trust
Attach redacted copies of documents, if any that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $ _____
**Amount of the claim that is secured:**   $ 910,628.01 _____
**Amount of the claim that is unsecured:**   $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $ 373,773.84

**Annual Interest Rate** (when case was filed)  5 _____ %
☐ Fixed
☐ Variable
☒ Fixed with Steps due to loan modification

**10. Is this claim based on a** ☒ No
**lease?** ☐ Yes.  Amount necessary to cure any default as of the date of the petition.  $ _____

**11. Is this claim subject to a** ☒ No
**right of setoff?** ☐ Yes.  Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check all that apply:*

|  | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor.s business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ _____ |

\* Amounts are subject to adjustment on 4/1/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   12/07/2018
                   MM / DD / YYYY

/S/ Maun Michelle Mason
_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name        Maun Michelle Mason
            _____
            First name            Middle name        Last name

Title       Vice President Loan Documentation

Company     Wells Fargo Bank, N.A.
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     _____
            Number      Street

            _____
            City                        State    ZIP Code

Contact phone   _____

Email       _____

---

RECORDING REQUESTED BY
UNITED TITLE COMPANY

Recording Requested By:

**WELLS FARGO BANK, N.A.**
**1 HOME CAMPUS**
**DES MOINES, IA  50328-**

11/30/05

05 2913547

Return To:
**WELLS FARGO BANK, N.A.**
**FINAL DOCUMENTS X4701-022**
**1000 BLUE GENTIAN ROAD**
**EAGAN, MN  55121-1663**
Prepared By:
**JULIE HAWKINS**
**WELLS FARGO BANK, N.A.**
**1 HOME CAMPUS**
**DES MOINES, IA  50328-**

———————[Space Above This Line For Recording Data]———————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **NOVEMBER 17, 2005**, together with all Riders to this document.
(B) **"Borrower"** is
**EDWIN I GUARDIA, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY**

Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is **WELLS FARGO BANK, N.A.**

Lender is a **National Association**
organized and existing under the laws of **THE UNITED STATES OF AMERICA**

CALIFORNIA - Single Family - **Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT

Page 1 of 18        Initials: EIG

FORM 3005   1/01

SCA01   Rev 11/09/00



3

Lender's address is
**P. O. BOX 5137, DES MOINES, IA  50306-5137**
Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is **FIDELITY NATIONAL TITLE INSURANCE COMPANY**

**(E) "Note "** means the promissory note signed by Borrower and dated **NOVEMBER 17, 2005**
The Note states that Borrower owes Lender **FIVE HUNDRED SIXTY THOUSAND AND
NO/100**                                                                       Dollars
(U.S. $ .....**560,000.00**...........) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than   **DECEMBER 1, 2035**
**(F) "Property"** means the property that is described below under the heading "Transfer of
Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as
well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a
condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an
electronic terminal, telephonic instrument, computer, or magnetic tape so as to order,
instruct, or authorize a financial institution to debit or credit an account. Such term includes,
but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers
initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or
(iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be
amended from time to time, or any additional or successor legislation or regulation that

SCA02   Rev 12/18/00                   Page 2 of 18            Initials:         FORM 3005   1/01

05 2913547



11/30/05

4

governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's convenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County  of  **LOS ANGELES**  :
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

LEGAL DESCRIPTION IS ATTACHED HERETO AS SCHEDULE "A" AND MADE A PART HEREOF.

       See Exhibit A Attached

Parcel ID Number:      which currently has the address of
**20656 BLACKHAWK ST**           [Street]
**CHATSWORTH**    [City] , California  91311 [Zip Code]
("Property Address"):

  TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

  BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

  THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

SCA03 Rev 11/09/00   Page 3 of 18  Initials:   FORM 3005 1/01

05 2913547

Case 1:18-bk-12337-MT   Doc 86   Filed 06/19/19   Entered 06/20/19 15:13:43   Desc
Case 1:18-bk-12337-MB   Main Document   Page 27 of 70

Exhibit 10  Page 27 of 70

11/30/05

5

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the
Note and any prepayment charges and late charges due under the Note. Borrower shall
also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and
this Security Instrument shall be made in U.S. currency. However, if any check or other
instrument received by Lender as payment under the Note or this Security Instrument is
returned to Lender unpaid, Lender may require that any or all subsequent payments due
under the Note and this Security Instrument be made in one or more of the following forms,
as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's
check or cashier's check, provided any such check is drawn upon an institution whose
deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds
Transfer.

Payments are deemed received by Lender when received at the location designated in
the Note or at such other location as may be designated by Lender in accordance with the
notice provisions in Section 15. Lender may return any payment or partial payment if the
payment or partial payments are insufficient to bring the Loan current. Lender may accept
any payment or partial payment insufficient to bring the Loan current, without waiver of any
rights hereunder or prejudice to its rights to refuse such payment or partial payments in the
future, but Lender is not obligated to apply such payments at the time such payments are
accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender
need not pay interest on unapplied funds. Lender may hold such unapplied funds until
Borrower makes payment to bring the Loan current. If Borrower does not do so within a
reasonable period of time, Lender shall either apply such funds or return them to Borrower.
If not applied earlier, such funds will be applied to the outstanding principal balance under
the Note immediately prior to foreclosure. No offset or claim which Borrower might have
now or in the future against Lender shall relieve Borrower from making payments due under
the Note and this Security Instrument or performing the covenants and agreements secured
by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2,
all payments accepted and applied by Lender shall be applied in the following order of
priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due
under Section 3. Such payments shall be applied to each Periodic Payment in the order in
which it became due. Any remaining amounts shall be applied first to late charges, second
to any other amounts due under this Security Instrument, and then to reduce the principal
balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which
includes a sufficient amount to pay any late charge due, the payment may be applied to the
delinquent payment and the late charge. If more than one Periodic Payment is outstanding,
Lender may apply any payment received from Borrower to the repayment of the Periodic
Payments if, and to the extent that, each payment can be paid in full. To the extent that any
excess exists after the payment is applied to the full payment of one or more Periodic
Payments, such excess may be applied to any late charges due. Voluntary prepayments
shall be applied first to any prepayment charges and then as described in the Note.

05 2913547

11/30/05

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be

SCA05    Rev 11/09/00          Page 5 of 18          Initials:          FORM 3005    1/01

05 2913547

11/30/05

required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination



05 2913547

*8*

or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In

SCA07   Rev 11/09/00                Page 7 of 18        Initials:         FORM 3005   1/01

05 2913547



11/30/05

9

either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or

SCA08    Rev 09/22/00                Page 8 of 16              Initials               FORM 3005    1/01

05 2913547

*10*

(c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

SCA09   Rev 11/13/00                Page 9 of 16            Initials: _____            FORM 3005   1/01

05 2913547



Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exhange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

 

05 2913547



*12*

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by

05 2913547



Case 1:18-bk-12337-MT    Doc 86    Filed 06/19/19    Entered 06/20/19 15:48:46    Desc
Case 1-18-bk-12337-MB    Doc 86    Filed 06/20/19    Entered 06/20/19 15:48:46    Desc
Main Document    Page 34 of 70

Exhibit    Page 34 of 70

11730705

*13*

this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provision of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.  Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted ·so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.  Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly

05 2913547

14

requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

SCA13    Rev 11/08/00          Page 13 of 16      Initials:        FORM 3005    1/01

**05  2913547**



15

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer or servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

SCA14   Rev 12/27/00          Page 14 of 18          Initials: _____          FORM 3005   1/01

05 2913547



16

The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environment Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or**

05 2913547

before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

05 2913547

11/30/05

*18*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                 EDWIN I GUARDIA        Borrower

_____

SCA17    Rev 12/27/00          Page 17 of 18          Initials: _____          FORM 3005    1/01

05 2913547



11/30/05

19

State of California,                                                    ss:

County of _LOS Angeles_

On _NOV 22 2005_ before me, _Peter B Michinuck III_,
                    _notary public_                      personally appeared
EDWIN I GUARDIA, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal.

_____Peter B Michinich III_____ (Seal)

PETER B. MICHINOCK III
Commission # 1483519
Notary Public · California
Ventura County
My Comm. Expires May 12, 2008

SCA16   Rev 10/17/00          Page 18 of 18          Initials: _46_     FORM 3005   1/01

05 2913547

11/30/05

EXHIBIT "A"

LOT 15 OF TRACT NO. 22820, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES,
STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 629, PAGE (S) 42 AND 43 OF
MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON
SUBSTANCES LYING BELOW THE SURFACE OF SAID LAND, BUT WITHOUT THE RIGHT
OF SURFACE ENTRY, AS RESERVED OR GRANTED IN DOCUMENTS OF RECORD.

05 2913547



Case 1:18-bk-12337-MB    Doc 86    Filed 05/10/19    Entered 05/10/19 15:43:49    Desc
Exhibit    Page 42 of 70

11/30/05

2*

# ADJUSTABLE RATE RIDER
### (1-Year Treasury Index-Rate Caps)
### (Assumable after Initial Period)



This Adjustable Rate Rider is made this **17th day of NOVEMBER, 2005**................, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to .................................................... **WELLS FARGO BANK, N.A.**.................................................................................... (the "Lender") of the same date and covering the property described in the Security Instrument and located at: **20856 BLACKHAWK ST, CHATSWORTH, CA 91311**.................................................
(Property Address)

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an Initial Interest Rate of **6.875** %. The Note provides for changes in the interest rate and the monthly payments as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The Interest Rate I will pay may change on the first day of **DECEMBER, 2010**........................, and may change on that day every **12** th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date".

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an

Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**ADJUSTABLE RATE RIDER-1-Year Treasury Index (Assumable after Initial Period)**

*page 1*                                                    IO03GA  Rev. 06/03/05

05 2913547



11/30/05

**(C) Calculation of Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **two and three-quarters percentage point(s) (  2.750%)** ..........................to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be the new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Change Date will not be greater than **10.875**  % or less than **2.750**  %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than **two percentage point(s) (  2.000%)** from the rate interest I have been paying for the preceding **12** months. My interest rate will never be greater than **10.875**  %

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

*page 2*                                                          IO038C Rev. 03/30/05

05 2913547



11/30/05

23

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

1. UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower.

As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1. ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

## Transfer of the Property or a Beneficial Interest in Borrower.

As used in this section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**05 2913547**

 

IC003E   REV 06/06/05



11/30/05

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
EDWIN I. GUARDIA                    -Borrower

page 4

IO036G  Rev. 03/30/05

05 2913547



1

**This page is part of your document - DO NOT DISCARD**

## 20090449607

**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/30/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 11.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 11.00 |



**LEADSHEET**



200903300110009

00000270310



002033905

**SEQ:**
**13**

**DAR - Title Company (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**    T29

der: Non-Order Search  Doc: CALOSA:2009 00449607          Page 1 of 2          Created By: mududay  Printed: 10/28/2015 AM 04:29:14 IST

03/30/2009

*20090449607*

2

Recording Requested By
FIRST AMERICAN LOANSTAR TRUSTEE SERVICES

When Recorded Mail To
FIRST AMERICAN LOANSTAR TRUSTEE SERVICES
P O BOX 961253
FT WORTH, TX 76161-0253

APN    2707-013-015

TS No    20092070802217

Title Order No    4006323

Since above this line for Recorder's use only

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

BANK OF AMERICA, NATIONAL ASSOCIATION

all beneficial interest under that certain Deed of Trust dated    11/17/2005 executed by

EDWIN I GUARDIA

Trustor(s), to FIDELITY NATIONAL TITLE INSURANCE COMPANY, as Trustee, and recorded on 11/30/2005 as
Instrument No 05 2913547, in Book , Page  in the office of the County Recorder of LOS ANGELES County,
CALIFORNIA together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to
accrue under said Deed of Trust

Dated    MAR 2 2009

WELLS FARGO BANK, N.A. BY FIRST AMERICAN
LOANSTAR TRUSTEE SERVICES, LLC, ITS ATTORNEY IN
FACT

By:  Kyle Forsgren, Certifying Officer

State of    TEXAS

County of    TARRANT

Before me    Elizabeth B. Mills    on this day personally appeared,
Kyle Forsgren    known to me to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that this person executed the same for the purposes and consideration
therein expressed

Given under my hand and seal of office this    20th    day of    March , A D, 2009

(Notary Seal)

ELIZABETH B MILLS
Notary Public, State of Texas
My Commission Expires
January 25, 2012

(13)



This page is part of your document - DO NOT DISCARD

## 20120041808



**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/10/12 AT 04:07PM**

| | | |
|---|---|---|
| **FEES:** | 18.00 |
| **TAXES:** | 0.00 |
| **OTHER:** | 0.00 |
| **PAID:** | 18.00 |



**L E A D S H E E T**

201201100010110

00005188685

003723290

**SEQ:**
**01**

**DAR - Mail (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**

C460011





2

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN  55440-9790

01/10/2012

*20120041808*

## CORPORATE ASSIGNMENT OF DEED OF TRUST

$18

Los Angeles, California
SELLER'S SERVICING # ███████ "GUARDIA"

Prepared By:  Emily Hoover,  WELLS FARGO BANK, N.A. 1000 BLUE GENTIAN RD., EAGAN, MN  55121 (651)605-3792

For Value Received, WELLS FARGO BANK, N.A. hereby grants, assigns and tranfers to BANK OF AMERICA, NATIONAL ASSOCIATION at 6303 OWENSMOUTH AVE - WH-50D, WOODLAND HILLS, CA  91367 all beneficial interest under that certain Deed of Trust dated 11/17/2005 , in the amount of $560,000.00, executed by EDWIN I GUARDIA, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY to WELLS FARGO BANK, N.A. and Recorded:  11/30/2005  in Book: N/A Page: N/A as Instrument No.: 05 2913547 in the County of Los Angeles, State of California.

 Therein described or referred to, in said Deed of Trust, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

 WELLS FARGO BANK, N.A.
On  8/8/2011

 RAMESH VARDAN
Vice President Loan Documentation

STATE OF MINNESOTA
COUNTY OF DAKOTA

On  8/8/2011 , before me, Angela Marie Williams , a Notary Public in and for Dakota in the State of Minnesota, personally appeared RAMESH VARDAN , Vice President Loan Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Notary Expires: 1/31/2012

ANGELA MARIE WILLIAMS
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2012

(This area for notarial seal)

**This page is part of your document - DO NOT DISCARD**



## 20100857950



**Pages:**
**0007**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/23/10 AT 08:59AM**

| | |
|---|---|
| FEES: | 33.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 33.00 |



**L E A D S H E E T**



201006230780012

00002545800

002742392

**SEQ:**
**01**

**DAR - Mail (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**

When recorded mail to:
First American Title
Loss Mitigation Title Services 1079.27
P.O. Box 27670
Santa Ana, CA 92799
RE: GUARDIA - PROPERTY REPORT



06/23/2010

*20100857950*

THIS DOCUMENT WAS PREPARED BY:
**WILLIAM BAURERLY**
**WELLS FARGO BANK, N.A.**
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SOUTH CAROLINA 29715

Tax Parcel No.: 2707-013-015

[Space Above This Line for Recording Data]

533

# LOAN MODIFICATION AGREEMENT
### (Interest Only)

This Loan Modification Agreement ("Agreement"), made as of **JANUARY 22, 2010**        , between
**EDWIN I. GUARDIA, A MARRIED MAN AS HIS SOLE AND SEPARATE
PROPERTY**

("Borrower") and Wells Fargo Bank, N.A. ("Lender"), amends and supplements (1) the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") dated **NOVEMBER 17, 2005**     and (2) the adjustable
rate/fixed rate note (the "Note"), bearing the same date as, and secured by, the Security Instrument, which
covers the real and personal property described in the Security Instrument and defined therein as the "Property",
located at        **20656 BLACKHAWK STREET**     *Original loan Amount:*
                 **CHATSWORTH, CALIFORNIA 91311**    *$660,000.00*
                                                    *Recording Date: 11/30/05*
the real property described as **SEE ATTACHMENT A** *attached* *Document #: 052913547*
*hereto and made a part hereof*
THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE
AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S
INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE
BORROWER MUST PAY.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows
(notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.    As of **JANUARY 22, 2010**      , the amount payable under the Note and the Security
      Instrument is U.S. $   **614,307.72**        ("Unpaid Principal Balance"), consisting of the unpaid

LOAN MODIFICATION AGREEMENT --Single Family-- Fannie Mae UNIFORM INSTRUMENT      Form 3161  6/06
Modified by Wells Fargo Bank, N A
First American Loan Production Services                                   Loan Modification Interest Only
First American Real Estate Solutions LLC
FALPS# WELLSSC105 Rev 08-13-09            Page 1 of 6





3

amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized with this modification.

2. Borrower promises to pay the New Principal Balance, plus interest, to the order of Lender. Interest at the rate of **2.500000** % will begin to accrue on the New Principal Balance as of **02/01/2010** and the first new monthly payment on the New Principal Balance will be due on **03/01/2010** . Borrower's payment schedule for the modified loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Interest Payment Amount | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|---|
| 1- 10 | 2.500 | 02/01/2010 | 1,279.81 | N/A | 651.03 may adjust periodically | 1,930.84 may adjust periodically | 03/01/2010 | 10 |
| 11-360 | 5.000 | 12/01/2010 | N/A | 3,338.61 | May adjust periodically | May adjust periodically | 01/01/2011 | 350 |

Borrower will continue to make monthly payments on the same day of each succeeding month until principal and interest are paid in full, except that, if not sooner paid, the final payment of principal and interest shall be due and payable on **FEBRUARY 1, 2040** ("Maturity Date"). In addition to monthly principal and interest payments, Borrower shall make monthly escrow deposits as defined in the Note. Escrow deposit payments may be subject to change in the future.

3. If on the Maturity Date, Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

LOAN MODIFICATION AGREEMENT--Single Family--Fannie Mae UNIFORM INSTRUMENT    Form 3161  6/06
Modified by Wells Fargo Bank, N.A.
First American Loan Production Services                                      Loan Modification Interest Only Step
First American Real Estate Solutions LLC
FALPS# WELLSSC105S-2 1 Rev  10-20-09          Page 2 of 6





(e)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(f)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(g)     **CORRECTION AGREEMENT.** The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Agreement, hereby grants Lender limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Agreement required to be signed. In the event this limited power of attorney is exercised, the Borrower(s) will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the (i) interest rate, (ii) term, (iii) outstanding principal balance or (iv) Borrower(s) monthly principal and interest payments as modified by this Agreement. This limited power of attorney shall automatically terminate in 120 days from the closing date of this Agreement.  (Borrower Initial)

LOAN MODIFICATION AGREEMENT --Single Family-- Fannie Mae UNIFORM INSTRUMENT          Form 3161  6/06
Modified by Wells Fargo Bank, N.A.
First American Loan Production Services                                             Loan Modification Interest Only
First American Real Estate Solutions LLC
FALPS# WELLSSC105-3 Rev 08-13-09          Page 3 of 6



5

WELLS FARGO BANK, N.A.
Lender

By: _____  2/9/10

Name:      **Yeng Yang**
           **V.P. of Loan Documentation**

Its: _____

_____  (Seal)
EDWIN GUARDIA                                        -Borrower

_____  (Seal)
                                                     -Borrower

_____  (Seal)
                                                     -Borrower

_____  (Seal)
                                                     -Borrower

_____  (Seal)
                                                     -Borrower

_____  (Seal)
                                                     -Borrower

LOAN MODIFICATION AGREEMENT--Single Family--Fannie Mae UNIFORM INSTRUMENT         Form 3161   6/06
Modified by Wells Fargo Bank, N.A.
First American Loan Production Services                                    Loan Modification Interest Only
First American Real Estate Solutions LLC
FALPS# WELLSSC105-4 Rev 08-13-09            Page 4 of 6



ATTACHMENT A

LOT 15 OF TRACT NO. 22820, IN THE CITY OF LOS ANGELES, COUNTY
OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN
BOOK 629, PAGES 42 AND 43 OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.



*1*

[Space Below This Line for Acknowledgment]

### BORROWER'S ACKNOWLEDGMENT

State of California                    )

County of **Los Angeles**              )

On **2/2/2010** before me, **Patricia M. Gonzalez, Notary Public**, personally appeared
*(here insert name and title of officer)*

**EDWIN I GUARDIA**

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature **Patica M Gonzalez**                    (Seal)

PATRICA M. GONZALEZ
Commission # 1726409
Notary Public - California
Los Angeles County
My Comm. Expires Feb 23, 2011

PATRICA M. GONZALEZ
Commission # 1726409
Notary Public - California
Los Angeles County
My Comm. Expires Feb 23, 2011

### LENDER'S ACKNOWLEDGMENT

State of **Minnesota**                 )

County of **Ramsey**                   )

On **2/9/10** before me, **Naeem SM Ayub, Notary**, personally appeared
*(here insert name and title of officer)*

**Yang Yang**

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.



Naeem SM Ayub
NOTARY PUBLIC
State of Minnesota
My Commission Expires 1-31-2014

Signature **Jn. Yaley**                    (Seal)

First American Loan Production Services                        Loan Modification Interest Only
First American Real Estate Solutions LLC
FALPS# WELLSSC105CA-6 Rev. 08-13-09        Page 6 of 6



**This page is part of your document - DO NOT DISCARD**

05 2913547

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**11/30/05 AT 08:00am**

## TITLE(S) :



L E A D    S H E E T

| FEE | | D.T.T. |
|---|---|---|
| FEE $ 73 C | | |
| DAF $ 2- | | |
| C-20    23 | | |

| CODE 20 | | |
| CODE 19 | | |
| CODE 9 | | |

NOTIFICATION SENT $4

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.

**Number of AIN's Shown**

 

**THIS FORM IS NOT TO BE DUPLICATED**



# ADJUSTABLE RATE NOTE

(1-Year Treasury Index-Rate Caps)
(Assumable after Initial Period)



THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| NOVEMBER 17, 2005 | SAN DIEGO | CALIFORNIA |
|---|---|---|
| Date | City | State |

20656 BLACKHAWK ST, CHATSWORTH, CA  91311
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  560,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is _____ WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  5.875%.

The interest rate I will pay will change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments

I will make a payment every month on the first day of each month beginning on JANUARY 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on DECEMBER 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at WELLS FARGO BANK, N.A.
P.O. BOX 10304, DES MOINES, IA  50306-0304
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. $   2,741.67 . This amount may change in accordance with subsection (C) below.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate I must pay. The First P&I Payment Due Date is JANUARY 1, 2011 .

Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

Beginning with the First P&I Payment Due Date, my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 and 5 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates

The interest rate I will pay may change on the first day of DECEMBER, 2010 . and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date".

ADJUSTABLE RATE NOTE-1-Year Treasury Index



Initials

1 of 5                          I0009A                          REV. 08/22/05

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding two and three-quarters percentage point(s) ( 2.750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be the new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than 10.875% or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than two percentage point(s) ( 2.000%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.875 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.

If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Initials 

IO008C          REV 03/30/06

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of interest during the period when my payment is interest only; and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A). above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:



Initials

3 of 5

10009E REV. 01/14/05

**(A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.**

As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.**

As used in this section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



Initials: JG                                    4 of 5                        IO009G            REV. 03/26/05

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
EDWIN I GUARDIA                         -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY _____
Joan M. Mills, Vice President

5 of 5

EC009i  REV. 12/07/04

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Wells Fargo Bank, N.A.
Attn: Default Document Processing MAC #N9286-01Y
1000 Blue Gentian Road
Eagan, MN 55121-7700

A true and correct copy of the foregoing document entitled (*specify*): <u>Proof of Claim</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _
__12/07/2018__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Trustee:** cacb_ecf_sv@ch13wla.com
**Debtor's Attorney:** alla@teninalaw.com
**U.S Trustee:** ustpregion16.wh.ecf@usjoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Debtor Attorney:**
**Alla Tenina**
Law Offices of Alla Tenina
15250 Ventura Blvd Ste 601
Sherman Oaks, CA 91403
213-596-0265

**Trustee:**
**Elizabeth (SV) F Rojas (TR)**
Valley Executive Center
15260 Ventura Blvd., Suite 710
Sherman Oaks, CA 91403
818-933-5700

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| __12/07/2018__ | Maun Michelle Mason | __/s/Maun Michelle Mason__ |
| *Date* | *Printed Name* | *Signature* |


This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

Basis for asserting that the applicable party has the right to foreclose: Debtor(s) executed a promissory note secured by a mortgage, deed of trust, or security deed. The Promissory note is either made payable to creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage, deed of trust, or security deed.

## Additional Disclaimers (where applicable)

### 410

**Part 2:** Question 9-Describe contains the property address and may contain a description for "Other".

### 410A

#### Part 1:

Full creditor name cannot be displayed due to space limitation. see 410 part 1.1 for full name.

#### Part 2:

Principal Balance is from Part 5, Column M as of the Bankruptcy File Date.

Interest Due is the interest due as of the Bankruptcy File Date.

Fees, costs due is from Part 5, Column P as of the Bankruptcy File Date and includes any outstanding fees (i.e. late charges, property inspections) and cost (i.e. attorney costs), also included are corporate advances (i.e. tax, insurance) for non-escrowed loans as of the Bankruptcy File Date. Any fees, costs due that are incurred pre-petition and waived post-petition will not be included.

Escrow deficiency for funds advanced is from Part 5, Column O (if negative balance) as of the Bankruptcy File Date.

Other includes any applicable Private Mortgage Insurance, other Optional Products (i.e. A & H, Life) or Deferred Interest, where applicable. due as of the Bankruptcy File Date. This line was added to ensure transparency.

Less Total Funds on hand is the total of Part 5. Column O (if positive balance) and Q as of the Bankruptcy File Date.

Total Debt not to be used for payoff purposes.

#### Part 3:

Principal and Interest is the principal and interest portion of Part 5, Column G, as of the Bankruptcy File Date. (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition principal and interest amounts).

Pre-Petition Fees Due is from Part 5, Column P as of the Bankruptcy File Date. Any fees, costs due that are incurred pre-petition and waived post-petition will not be included.

Escrow Deficiency for Funds Advanced is from Part 5, Column O (if negative balance) as of the Bankruptcy File Date.

Projected Escrow Shortage is the Escrow Required from the escrow analysis minus a positive escrow balance as of the Bankruptcy File Date. (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition escrow amounts).

Other includes any applicable Optional Products (i.e. A & H, Life) due as of the bankruptcy file date. This line was added to ensure transparency. (If post-petition payments are included as required by Local Rule or practice, this field will include post-petition Optional Product amounts).

Less Funds on Hand is from Part 5, column Q as of the Bankruptcy File Date.

#### Part 4:

Optional Products includes any applicable optional products (i.e. A & H, Life) due as of the Bankruptcy File Date. This line was added to ensure transparency.

(*)This disclaimer has been added to the form to explain that the monthly payment amount may change periodically throughout the life of the loan.

#### Part 5:

If any of the transactions in the loan payment history contain amounts for optional products, the amount for that product will be reflected in either the Contractual payment amount or the Funds Received amount, and will be applied in those amounts. It will also be reflected in column G as described below

Column G In addition to the items listed, this also includes any past due PMI or optional products (i.e. A & H, Life) amounts, as applicable. Optional product (i.e. A & H, Life) amounts will not be included in columns H-Q due to no appropriate column heading for this type of transaction.

Column J includes taxes, insurance and MIP/PMI as applicable.

Column N will only be populated if the loan is Daily Simple Interest or if Deferred Interest exists on the account.

Column Q includes taxes, insurance and MIP/PMI as applicable.



**Mortgage Proof of Claim Attachment: Additional Page**    **(12/15)**

Case number      1 18-bk-12337-MB

Debtor 1      Edwin I Guevara

**: 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **B.** Contractual payment amount | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges balance | **Q.** Unapplied funds balance |
| | | | | | | | | | | | | | | | 0.00 |
| 2018 | 4,040.84 | | Monthly payment | 01/01/2011 | 344,913.84 | | | | | | 612,514.69 | 0.00 | -55,989.16 | 3,075.92 | |
| 2018 | 4,040.84 | | Monthly payment | 02/01/2011 | 348,954.68 | | | | | | 612,514.69 | 0.00 | -55,989.16 | 3,075.92 | |
| 2018 | 4,040.84 | | Monthly payment | 03/01/2011 | 352,995.52 | | | | | | 612,514.69 | 0.00 | -55,989.16 | 3,075.92 | |
| 2018 | 4,040.84 | | Monthly payment | 01/01/2011 | 357,036.36 | | | | | | 612,514.69 | 0.00 | -55,989.16 | 3,075.92 | |
| 2018 | | 105.00 | Recording fees | 01/01/2011 | 357,036.36 | | | | 105.00 | | 612,514.69 | 0.00 | -55,989.16 | 3,180.92 | |
| 2018 | 4,040.84 | | Monthly payment | 01/01/2011 | 361,077.20 | | | | | | 612,514.69 | 0.00 | -55,989.16 | 3,180.92 | |
| 2018 | | | Bankruptcy Filed | 01/01/2011 | 361,077.20 | | | | | | 612,514.69 | 0.00 | -55,989.16 | 3,180.92 | |



Offic al Form 410A          Mortgage Proof of Claim Attachment          page 8 of 8

**Mortgage Proof of Claim Attachment: Additional Page**                         (12/15)

Case number:   1:18-bk-12337-MB
Debtor 1:      Edwin Guarda

**1.5 : Loan Payment History from First Date of Default**

| | B. Contractual payment amount | Account Activity | | | F. Contractual Pmt due date | G. Prin, int & esc past due balance | How Funds Were Applied/Amount Incurred | | | | L. Unapplied funds | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | C. Funds received | D. Amount incurred | E. Description | | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 1/2017 | 3,930.07 | | | Monthly payment | 01/01/2011 | 281,311.90 | | | | | | 612,514.69 | 0.00 | -42,976.16 | 3,075.92 | 0.00 |
| 1/2017 | 3,930.07 | | | Monthly payment | 01/01/2011 | 285,741.97 | | | | | | 612,514.69 | 0.00 | -42,918.16 | 3,075.92 | |
| 1/2017 | 3,930.07 | | | Monthly payment | 01/01/2011 | 289,672.04 | | | | | | 612,514.69 | 0.00 | -42,916.16 | 3,075.92 | |
| 2/2017 | | | 3,157.29 | County tax disbursement | 01/01/2011 | 289,672.04 | 0.00 | 0.00 | | 3,157.29 | 0.00 | 612,514.69 | 0.00 | -46,073.45 | 3,075.92 | |
| 4/2017 | | | 1,312.00 | Hazard insurance Disbursement | 01/01/2011 | 289,672.04 | 0.00 | 0.00 | 1,312.00 | | 0.00 | 612,514.69 | 0.00 | -47,385.45 | 3,075.92 | |
| 1/2017 | 3,930.01 | | | Monthly payment | 01/01/2011 | 293,602.05 | | | | | | 612,514.69 | 0.00 | -47,385.45 | 3,075.92 | |
| 1/2017 | 3,930.01 | | | Monthly payment | 01/01/2011 | 297,532.06 | | | | | | 612,514.69 | 0.00 | -47,385.45 | 3,075.92 | |
| 1/2017 | 3,930.01 | | | Monthly payment | 01/01/2011 | 301,462.07 | | | | | | 612,514.69 | 0.00 | -47,385.45 | 3,075.92 | |
| 1/2017 | 3,930.01 | | | Monthly payment | 01/01/2011 | 305,392.08 | | | | | | 612,514.69 | 0.00 | -47,385.45 | 3,075.92 | |
| 1/2017 | 3,930.01 | | | Monthly payment | 01/01/2011 | 309,322.09 | | | | | | 612,514.69 | 0.00 | -47,385.45 | 3,075.92 | |
| 1/2017 | 3,930.01 | | | Monthly payment | 01/01/2011 | 313,252.10 | | | | | | 612,514.69 | 0.00 | -47,385.45 | 3,075.92 | |
| 1/2017 | 3,930.01 | | | Monthly payment | 01/01/2011 | 317,182.11 | | | | | | 612,514.69 | 0.00 | -47,385.45 | 3,075.92 | |
| 1/2017 | 3,930.01 | | | Monthly payment | 01/01/2011 | 321,112.12 | | | | | | 612,514.69 | 0.00 | -47,385.45 | 3,075.92 | |
| 1/2017 | | | 3,615.85 | County tax disbursement | 01/01/2011 | 321,112.12 | | | | 3,615.85 | 0.00 | 612,514.69 | 0.00 | -51,001.31 | 3,075.92 | |
| 1/2018 | 3,930.01 | | | Monthly payment | 01/01/2011 | 325,042.13 | | | | | | 612,514.69 | 0.00 | -51,001.31 | 3,075.92 | |
| 1/2018 | 3,930.01 | | | Monthly payment | 01/01/2011 | 328,972.14 | | | | | | 612,514.69 | 0.00 | -51,001.31 | 3,075.92 | |
| 1/2018 | 3,930.01 | | | Monthly payment | 01/01/2011 | 332,902.15 | | | | | | 612,514.69 | 0.00 | -51,001.31 | 3,075.92 | |
| 1/2018 | 3,930.01 | | | Monthly payment | 01/01/2011 | 336,832.16 | | | | | | 612,514.69 | 0.00 | -51,001.31 | 3,075.92 | |
| 3/2018 | | | 1,372.00 | Hazard insurance Disbursement | 01/01/2011 | 336,832.16 | 0.00 | 0.00 | 1,372.00 | | 0.00 | 612,514.69 | 0.00 | -52,373.31 | 3,075.92 | |
| 3/2018 | | | 3,615.85 | County tax disbursement | 01/01/2011 | 336,832.16 | 0.00 | 0.00 | | 3,615.85 | 0.00 | 612,514.69 | 0.00 | -55,989.16 | 3,075.92 | |
| 1/2018 | 4,040.84 | | | Monthly payment | 01/01/2011 | 340,873.00 | | | | | | 612,514.69 | 0.00 | -55,989.16 | 3,075.92 | |





**Mortgage Proof of Claim Attachment: Additional Page**  (12/15)

Case number    1:18-bk-12337-MB

Debtor 1    Edwin Guerra

### 15 : Loan Payment History from First Date of Default

| | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 2015 | 3,848.21 | | Monthly payment | 01/01/2011 | 211,565.80 | | | | | | | 612,514.69 | 0.00 | -12,544.47 | 3,075.92 | 0.00 |
| 2015 | 3,848.21 | | Monthly payment | 01/01/2011 | 215,414.01 | | | | | | | 612,514.69 | 0.00 | -12,544.47 | 3,075.92 | |
| 2015 | 3,848.21 | | Monthly payment | 01/01/2011 | 219,262.22 | | | | | | | 612,514.69 | 0.00 | -12,544.47 | 3,075.92 | |
| 2015 | 3,848.21 | | Monthly payment | 01/01/2011 | 223,110.43 | | | | | | | 612,514.69 | 0.00 | -12,544.47 | 3,075.92 | |
| 2015 | 3,848.21 | | Monthly payment | 01/01/2011 | 226,958.64 | | | | | | | 612,514.69 | 0.00 | -12,544.47 | 3,075.92 | |
| 2015 | | 3,157.70 | County tax disbursement | 01/01/2011 | 226,958.64 | | 0.00 | 0.00 | 3,157.70 | | 0.00 | 612,514.69 | 0.00 | -15,702.17 | 3,075.92 | |
| 2015 | 3,848.21 | | Monthly payment | 01/01/2011 | 230,806.85 | | | | | | | 612,514.69 | 0.00 | -15,702.17 | 3,075.92 | |
| 2016 | 3,848.21 | | Monthly payment | 01/01/2011 | 234,655.06 | | | | | | | 612,514.69 | 0.00 | -15,702.17 | 3,075.92 | |
| 2016 | 3,929.07 | | Monthly payment | 01/01/2011 | 238,484.13 | | | | | | | 612,514.69 | 0.00 | -15,702.17 | 3,075.92 | |
| 2016 | 3,929.07 | | Monthly payment | 01/01/2011 | 242,513.20 | | | | | | | 612,514.69 | 0.00 | -15,702.17 | 3,075.92 | |
| 2016 | | 899.00 | Hazard insurance disbursement | 01/01/2011 | 242,513.20 | | 0.00 | 0.00 | 899.00 | | 0.00 | 612,514.69 | 0.00 | -16,601.17 | 3,075.92 | |
| 2016 | | 3,157.69 | County tax disbursement | 01/01/2011 | 242,513.20 | | 0.00 | 0.00 | 3,157.69 | | 0.00 | 612,514.69 | 0.00 | -19,758.86 | 3,075.92 | |
| 2016 | 3,929.07 | | Monthly payment | 01/01/2011 | 246,442.27 | | | | | | | 612,514.69 | 0.00 | -19,758.86 | 3,075.92 | |
| 2016 | 3,930.07 | | Monthly payment | 01/01/2011 | 250,371.34 | | | | | | | 612,514.69 | 0.00 | -19,758.86 | 3,075.92 | |
| 2016 | 3,930.07 | | Monthly payment | 01/01/2011 | 254,301.41 | | | | | | | 612,514.69 | 0.00 | -19,758.86 | 3,075.92 | |
| 2016 | 3,930.07 | | Monthly payment | 01/01/2011 | 258,231.48 | | | | | | | 612,514.69 | 0.00 | -19,758.86 | 3,075.92 | |
| 2016 | 3,930.07 | | Monthly payment | 01/01/2011 | 262,161.55 | | | | | | | 612,514.69 | 0.00 | -19,758.86 | 3,075.92 | |
| 2016 | 3,930.07 | | Monthly payment | 01/01/2011 | 266,091.62 | | | | | | | 612,514.69 | 0.00 | -19,758.86 | 3,075.92 | |
| 2016 | 3,930.07 | | Monthly payment | 01/01/2011 | 270,021.69 | | | | | | | 612,514.69 | 0.00 | -19,758.86 | 3,075.92 | |
| 2016 | 3,930.07 | | Monthly payment | 01/01/2011 | 273,951.76 | | | | | | | 612,514.69 | 0.00 | -19,758.86 | 3,075.92 | |
| 2016 | | 3,157.30 | County tax disbursement | 01/01/2011 | 273,951.76 | | 0.00 | 0.00 | 3,157.30 | | 0.00 | 612,514.69 | 0.00 | -42,916.16 | 3,075.92 | |
| 2016 | 3,930.07 | | Monthly payment | 01/01/2011 | 277,881.83 | | | | | | | 612,514.69 | 0.00 | -42,916.16 | 3,075.92 | |





**Mortgage Proof of Claim Attachment: Additional Page**    **(12/15)**

Case number: 1:18-bk-12337-MB

Debtor 1: Edwin I Guardia

**Part 5 : Loan Payment History from First Date of Default**

| | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc paid item balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
| 1/2014 | | | 2,789.24 | County tax disbursement | 01/01/2011 | 149,994.44 | 0.00 | 0.00 | -2,789.24 | | 0.00 | 612,514.69 | 0.00 | -24,646.51 | 3,075.92 | 2,431.53 |
| 1/2014 | | | 864.00 | Hazard insurance Disbursement | 01/01/2011 | 149,994.44 | 0.00 | 0.00 | -864.00 | | | 612,514.69 | 0.00 | -25,510.51 | 3,075.92 | 2,431.53 |
| 1/2014 | 3,848.21 | | | Monthly payment | 01/01/2011 | 153,842.65 | | | | | | 612,514.69 | 0.00 | -25,510.51 | 3,075.92 | 2,431.53 |
| 1/2014 | 3,848.21 | | | Monthly payment | 01/01/2011 | 157,690.86 | | | | | | 612,514.69 | 0.00 | -25,510.51 | 3,075.92 | 2,431.53 |
| 1/2014 | 3,848.21 | | | Monthly payment | 01/01/2011 | 161,539.07 | | | | | | 612,514.69 | 0.00 | -25,510.51 | 3,075.92 | 2,431.53 |
| 1/2014 | 3,848.21 | | | Monthly payment | 01/01/2011 | 165,387.28 | | | | | | 612,514.69 | 0.00 | -25,510.51 | 3,075.92 | 2,431.53 |
| 1/2014 | 3,848.21 | | | Monthly payment | 01/01/2011 | 169,235.49 | | | | | | 612,514.69 | 0.00 | -25,510.51 | 3,075.92 | 2,431.53 |
| 1/2014 | 3,848.21 | | | Monthly payment | 01/01/2011 | 173,083.70 | | | | | | 612,514.69 | 0.00 | -25,510.51 | 3,075.92 | 2,431.53 |
| 1/2014 | 3,848.21 | | | Monthly payment | 01/01/2011 | 176,931.91 | | | | | | 612,514.69 | 0.00 | -25,510.51 | 3,075.92 | 2,431.53 |
| 1/2014 | 3,848.21 | | | Monthly payment | 01/01/2011 | 180,780.12 | | | | | | 612,514.69 | 0.00 | -25,510.51 | 3,075.92 | 2,431.53 |
| 1/2014 | | | 3,073.48 | County tax disbursement | 01/01/2011 | 180,780.12 | 0.00 | 0.00 | -3,073.48 | | 0.00 | 612,514.69 | 0.00 | -28,583.99 | 3,075.92 | 2,431.53 |
| 1/2015 | 3,848.21 | | | Monthly payment | 01/01/2011 | 184,628.33 | | | | | | 612,514.69 | 0.00 | -28,583.99 | 3,075.92 | 2,431.53 |
| 1/2015 | 3,848.21 | | | Monthly payment | 01/01/2011 | 188,476.54 | | | | | | 612,514.69 | 0.00 | -28,583.99 | 3,075.92 | 2,431.53 |
| 1/2015 | 3,848.21 | | | Monthly payment | 01/01/2011 | 192,324.75 | | | | | | 612,514.69 | 0.00 | -28,583.99 | 3,075.92 | 2,431.53 |
| 1/2015 | 3,848.21 | | | Monthly payment | 01/01/2011 | 196,172.96 | | | | | | 612,514.69 | 0.00 | -28,583.99 | 3,075.92 | 2,431.53 |
| 1/2015 | | 0.00 | | Reversal | 01/01/2011 | 196,172.96 | 0.00 | 0.00 | -3,073.48 | | 2,431.53 | 612,514.69 | 0.00 | -31,657.47 | 3,075.92 | |
| 1/2015 | 3,848.21 | | | Monthly payment | 01/01/2011 | 200,021.17 | | | | | 0.00 | 612,514.69 | 0.00 | -31,657.47 | 3,075.92 | |
| 1/2015 | | | 887.00 | Hazard insurance Disbursement | 01/01/2011 | 200,021.17 | 0.00 | 0.00 | -887.00 | | | 612,514.69 | 0.00 | -32,544.47 | 3,075.92 | |
| 1/2015 | 3,848.21 | | | Monthly payment | 01/01/2011 | 203,869.38 | | | | | | 612,514.69 | 0.00 | -32,544.47 | 3,075.92 | |
| 1/2015 | 3,848.21 | | | Monthly payment | 01/01/2011 | 207,717.59 | | | | | | 612,514.69 | 0.00 | -32,544.47 | 3,075.92 | |

Official Form 410A    Mortgage Proof of Claim Attachment    page 5 of 6



**Mortgage Proof of Claim Attachment: Additional Page** (12/15)

Case number: 1:18-bk-12337-MB

Debtor 1: Edwin I Guardia

**t 5 : Loan Payment History from First Date of Default**

| | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or incurred | | | | |
| 1/2012 | 3,848.21 | | | Monthly payment | 01/01/2011 | 84,574.87 | | | | | | 612,514.69 | 0.00 | -7,648.09 | 3,075.92 | 2,431.53 |
| 1/2012 | 3,848.21 | | | Monthly payment | 01/01/2011 | 88,423.08 | | | | | | 612,514.69 | 0.00 | -7,648.09 | 3,075.92 | 2,431.53 |
| 3/2012 | | | 2,879.48 | County tax disbursement | 01/01/2011 | 88,423.08 | | | | -2,879.48 | | 612,514.69 | 0.00 | -10,527.57 | 3,075.92 | 2,431.53 |
| 4/2012 | 3,848.21 | | | Monthly payment | 01/01/2011 | 92,271.29 | | | | | | 612,514.69 | 0.00 | -10,527.57 | 3,075.92 | 2,431.53 |
| 1/2013 | 3,848.21 | | | Monthly payment | 01/01/2011 | 96,119.50 | | | | | | 612,514.69 | 0.00 | -10,527.57 | 3,075.92 | 2,431.53 |
| 5/2013 | | | 5,461.00 | Hazard insurance disbursement | 01/01/2011 | 96,119.50 | | | | -5,461.00 | | 612,514.69 | 0.00 | 16,188.57 | 3,075.92 | 2,431.53 |
| 1/2013 | 3,848.21 | | | Monthly payment | 01/01/2011 | 99,967.71 | | | | | | 612,514.69 | 0.00 | 16,188.57 | 3,075.92 | 2,431.53 |
| 1/2013 | 3,848.21 | | | Monthly payment | 01/01/2011 | 103,815.92 | | | | | | 612,514.69 | 0.00 | 16,188.57 | 3,075.92 | 2,431.53 |
| 3/2013 | | | 2,879.46 | County tax disbursement | 01/01/2011 | 103,815.92 | | | | -2,879.46 | | 612,514.69 | 0.00 | 19,068.03 | 3,075.92 | 2,431.53 |
| 1/2013 | 3,848.21 | | | Monthly payment | 01/01/2011 | 107,664.13 | | | | | | 612,514.69 | 0.00 | 19,068.03 | 3,075.92 | 2,431.53 |
| 3/2013 | 3,848.21 | | | Monthly payment | 01/01/2011 | 111,512.34 | | | | | | 612,514.69 | 0.00 | 19,068.03 | 3,075.92 | 2,431.53 |
| 1/2013 | 3,848.21 | | | Monthly payment | 01/01/2011 | 115,360.55 | | | | | | 612,514.69 | 0.00 | 19,068.03 | 3,075.92 | 2,431.53 |
| 1/2013 | 3,848.21 | | | Monthly payment | 01/01/2011 | 119,208.76 | | | | | | 612,514.69 | 0.00 | 19,068.03 | 3,075.92 | 2,431.53 |
| 1/2013 | 3,848.21 | | | Monthly payment | 01/01/2011 | 123,056.97 | | | | | | 612,514.69 | 0.00 | 19,068.03 | 3,075.92 | 2,431.53 |
| 1/2013 | 3,848.21 | | | Monthly payment | 01/01/2011 | 126,905.18 | | | | | | 612,514.69 | 0.00 | 19,068.03 | 3,075.92 | 2,431.53 |
| 1/2013 | 3,848.21 | | | Monthly payment | 01/01/2011 | 130,753.39 | | | | | | 612,514.69 | 0.00 | 19,068.03 | 3,075.92 | 2,431.53 |
| 1/2013 | 3,848.21 | | | Monthly payment | 01/01/2011 | 134,601.60 | | | | | | 612,514.69 | 0.00 | 21,857.27 | 3,075.92 | 2,431.53 |
| 3/2013 | | | 2,789.24 | County tax disbursement | 01/01/2011 | 134,601.60 | | | | -2,789.24 | | 612,514.69 | 0.00 | 21,857.27 | 3,075.92 | 2,431.53 |
| 1/2013 | 3,848.21 | | | Monthly payment | 01/01/2011 | 138,449.81 | | | | | | 612,514.69 | 0.00 | 21,857.27 | 3,075.92 | 2,431.53 |
| 1/2014 | 3,848.21 | | | Monthly payment | 01/01/2011 | 142,298.02 | | | | | | 612,514.69 | 0.00 | 21,857.27 | 3,075.92 | 2,431.53 |
| 1/2014 | 3,848.21 | | | Monthly payment | 01/01/2011 | 146,146.23 | | | | | | 612,514.69 | 0.00 | 21,857.27 | 3,075.92 | 2,431.53 |
| 1/2014 | 3,848.21 | | | Monthly payment | 01/01/2011 | 149,994.44 | | | | | | 612,514.69 | 0.00 | 21,857.27 | 3,075.92 | 2,431.53 |



Official Form 410A

Mortgage Proof of Claim Attachment

page 4 of 8



## Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number.     1:18-bk-12337-MB

Debtor 1.     Edwin I Guarda

### 1 5 : Loan Payment History from First Date of Default

| 9 | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin. int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/2011 | 3,848.21 | | | Monthly payment | 01/01/2011 | 46,092.77 | | | | | | 612,514.69 | 0.00 | -3,986.93 | 1,572.96 | 2,431.53 |
| 6/2011 | | | 166.44 | Late Charge | 01/01/2011 | 46,092.77 | | | | 166.44 | | 612,514.69 | 0.00 | -3,986.93 | 1,744.40 | 2,431.53 |
| 5/2011 | | 8.79 | | Interest on Escrow deposit | 01/01/2011 | 46,092.77 | 0.00 | 0.00 | 8.79 | | 0.00 | 612,514.69 | 0.00 | -3,978.14 | 1,744.40 | 2,431.53 |
| 1/2012 | 3,848.21 | | | Monthly payment | 01/01/2011 | 49,940.98 | | | | | | 612,514.69 | 0.00 | -3,978.14 | 1,744.40 | 2,431.53 |
| 7/2012 | | | 166.44 | Late Charge | 01/01/2011 | 49,940.98 | | | | 166.44 | | 612,514.69 | 0.00 | -3,978.14 | 1,910.84 | 2,431.53 |
| 1/2012 | 3,848.21 | | | Monthly payment | 01/01/2011 | 53,789.19 | | | | | | 612,514.69 | 0.00 | -3,978.14 | 2,077.28 | 2,431.53 |
| 8/2012 | | | 166.44 | Late Charge | 01/01/2011 | 53,789.19 | | | | 166.44 | | 612,514.69 | 0.00 | -3,978.14 | 2,077.28 | 2,431.53 |
| 5/2012 | 3,848.21 | | | Monthly payment | 01/01/2011 | 57,637.40 | | | | | | 612,514.69 | 0.00 | -3,978.14 | 2,077.28 | 2,431.53 |
| 6/2012 | | | 828.00 | Hazard Insurance Disbursement | 01/01/2011 | 57,637.40 | | | -828.00 | | | 612,514.69 | 0.00 | -4,806.14 | 2,077.28 | 2,431.53 |
| 3/2012 | | | 2,841.95 | County tax disbursement | 01/01/2011 | 57,637.40 | | | -2,841.95 | | | 612,514.69 | 0.01 | -7,648.09 | 2,243.72 | 2,431.53 |
| 1/2012 | 3,848.21 | | | Monthly payment | 01/01/2011 | 61,485.61 | | | | | | 612,514.69 | 0.00 | -7,648.09 | 2,243.72 | 2,431.53 |
| 8/2012 | | | 166.44 | Late Charge | 01/01/2011 | 61,485.61 | | | | 166.44 | | 612,514.69 | 0.00 | -7,648.09 | 2,410.16 | 2,431.53 |
| 1/2012 | 3,848.21 | | | Monthly payment | 01/01/2011 | 65,333.82 | | | | | | 612,514.69 | 0.00 | -7,648.09 | 2,576.60 | 2,431.53 |
| 8/2012 | | | 166.44 | Late Charge | 01/01/2011 | 65,333.82 | | | | 166.44 | | 612,514.69 | 0.00 | -7,648.09 | 2,576.60 | 2,431.53 |
| 1/2012 | 3,848.21 | | | Monthly payment | 01/01/2011 | 69,182.03 | | | | | | 612,514.69 | 0.00 | -7,648.09 | 2,743.04 | 2,431.53 |
| 8/2012 | | | 166.44 | Late Charge | 01/01/2011 | 69,182.03 | | | | 166.44 | | 612,514.69 | 0.00 | -7,648.09 | 2,743.04 | 2,431.53 |
| 1/2012 | 3,848.21 | | | Monthly payment | 01/01/2011 | 73,030.24 | | | | | | 612,514.69 | 0.00 | -7,648.09 | 2,909.48 | 2,431.53 |
| 8/2012 | | | 166.44 | Monthly payment | 01/01/2011 | 76,878.45 | | | | 166.44 | | 612,514.69 | 0.00 | -7,648.09 | 3,075.92 | 2,431.53 |
| 8/2012 | 3,848.21 | | | Monthly payment | 01/01/2011 | 80,726.66 | | | | | | 612,514.69 | 0.00 | -7,648.09 | 3,075.92 | 2,431.53 |

